**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Bobby L. Bowles, | No. CV-15-00077-PHX-DGC |
| Plaintiff, | **ORDER** |
| v. | |
| Romulus Incorporated. | |
| Defendant. | |

Pro se Plaintiff Bobby L. Bowles asserts claims against Defendant Romulus Incorporated for a hostile work environment and retaliation in violation of Title VII of the Civil Rights Act of 1964. The parties have filed cross-motions for summary judgment. Docs. 30, 40. The motions are fully briefed (Docs. 41, 43, 44, 46), and no party has requested oral argument. The Court will grant Defendant's motion and deny Plaintiff's motion.

**I.    Background.**

Romulus is a franchisee of IHOP Restaurants. Doc. 31, ¶ 1. Bowles began working as a line cook at a Romulus IHOP on April 9, 2013. *Id.*, ¶ 2. On January 4, 2014, Bowles was working with his coworker Andres Guerro when Guerro became upset about the fact that Bowles was preparing to leave for his second job. *Id.*, ¶ 4. Guerro pulled aside the manager, Angel Wallace, to discuss the matter. *Id.*, ¶¶ 5-6. Moments later, Bowles overheard Wallace reprimanding Guerro for using the N-word. *Id.*, ¶ 7. Bowles acknowledged in his deposition that he did not hear Guerro utter the word, and is

1 unsure of the context in which it was used. *Id.*, ¶ 8. Immediately after Guerro's remark, Wallace informed Guerro that racially derogatory language was not permitted in the workplace and that future use of this language would result in Guerro's automatic termination. *Id.*, ¶ 10. The same day, Wallace gave Guerro a written notice labeled "FINAL WARNING," which stated that Guerro would be automatically terminated in the event he made any further derogatory remarks. *Id.*, ¶ 12. Guerro assured the company that he understood its policies and would never use this language again. *Id.*, ¶ 13.

On January 15, 2014, Bowles sent a letter to Romulus's Human Resources Department. Doc. 31-1 at 72-74. The letter offered Bowles's account of the January 4th incident and expressed his belief that the company's response was inadequate. *Id.* The letter further stated that "since the incident . . . Bowles no longer feels comfortable and[] has los[t] his desire [to stay] with this company." *Id.* at 73.

Romulus responded to the letter the day it was received, initiating a conversation between Bowles and Cevyn Hall, an employee with Romulus's Human Resources Department. Doc. 31, ¶ 24. During the conversation, Bowles again described the January 4th incident and expressed his belief that Guerro should be fired. *Id.*, ¶ 25. After assuring Bowles that Romulus took his report seriously and would not tolerate discrimination, Hall arranged for Bowles to meet with Romulus's District Manager, Sherry Lowary. *Id.*, ¶ 28. At this meeting, Lowary informed Bowles that the company had given Guerro a final warning in response to the incident, and that the company would terminate Guerro immediately if he engaged in any further inappropriate behavior. *Id.*, ¶¶ 31, 34.

Bowles did not raise any additional concerns at the meeting or at any other time during his tenure at Romulus. *Id.*, ¶ 37. Bowles did not report to work on February 15, 2014, and was deemed to have voluntarily resigned his job. *Id.*, ¶ 3.

**II.      Legal Standard.**

A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record]

which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is also appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**III. Analysis.**

    **A. Hostile Work Environment.**

To survive a motion for summary judgment, a plaintiff in a hostile work environment case must show a genuine dispute of material fact as to (1) whether a reasonable person of the plaintiff's background would find the workplace to be a hostile environment, and (2) whether the defendant failed to take adequate remedial and disciplinary action. *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1112 (9th Cir. 2004). Romulus argues that it is entitled to summary judgment because the undisputed facts show that there was no hostile work environment and that the company took adequate remedial and disciplinary action in response to the single instance of racial hostility that occurred during Bowles's employment at the restaurant. Doc. 30 at 7-13. Bowles counters that he was subjected to daily harassment and intimidation while employed at Romulus, and that Romulus's response to this hostility was inadequate as a matter of law. Doc. 41 at 8.

        **1. Work Environment.**

Title VII provides that it is "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms,

- 3 -

1    conditions, or privileges of employment, because of such individual's race." 42 U.S.C.
2    § 2000e-2(a)(1).  An employer violates this provision by maintaining a hostile work
3    environment.  *See McGinest*, 360 F.3d at 1112.  A hostile work environment is one
4    "permeated with discriminatory intimidation, ridicule, and insult . . . sufficiently severe
5    or pervasive to alter the conditions of the victim's employment." *Harris v. Forklift Sys.,*
6    *Inc.*, 510 U.S. 17, 21 (1993) (internal citations and quotation marks omitted).  Whether
7    workplace conduct is sufficiently severe or pervasive to give rise to a claim for hostile
8    work environment is a question of law.  *See Fuller v. City of Oakland*, 47 F.3d 1522,
9    1527 (9th Cir. 1995).  In evaluating the severity of workplace conduct, courts must take
10   "the perspective of a reasonable person belonging to the racial or ethnic group of the
11   plaintiff."  *McGinest*, 360 F.3d at 1115.  In addition, courts must "look to all of the
12   circumstances, including the frequency, severity, and nature (i.e., physically threatening
13   or humiliating as opposed to merely verbally offensive) of the conduct."  *Galdamez v.*
14   *Potter*, 415 F.3d 1015, 1023 (9th Cir. 2005).

15   It is undisputed that one of Bowles's coworkers used a racially derogatory term on
16   January 4, 2014.  Doc. 31, ¶¶ 6-8.  This incident did not, by itself, create a hostile work
17   environment.  As the Ninth Circuit has explained, "an isolated incident of harassment by
18   a co-worker will rarely (if ever) give rise to a reasonable fear that such harassment has
19   become a permanent feature of the employment relationship."  *Johnson v. Riverside*
20   *Healthcare Sys., LP*, 534 F.3d 1116, 1123 (9th Cir. 2008) (citing *Brooks v. City of San*
21   *Mateo*, 229 F.3d 917, 924 (9th Cir. 1999)) (internal formatting omitted).  Courts have
22   repeatedly held that a coworker's use of a racially derogatory term on a single occasion
23   does not create a hostile work environment.  *See Meritor Sav. Bank, FSB v. Vinson*, 477
24   U.S. 57, 67 (1986) ("mere utterance of an ethnic or racial epithet which endangers
25   offensive feelings in an employee would not affect the conditions of employment to [a]
26   sufficiently significant degree [as] to violate Title VII") (internal quotation marks
27   omitted); *Bolden v. PRC Inc.*, 43 F.3d 545, 551 (10th Cir. 1994); *see also Johnson*, 534
28   F.3d at 1122 ("A hostile work environment, by its 'very nature involves repeated

conduct.'") (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002)). That is especially true where, as here, the employer takes prompt corrective action against the employee who used the slur. *See, e.g., Bagley v. W.J. Maloney Plumbing, Inc.*, No. 2:12-cv-01901-PHX-SRB (D. Ariz., Feb. 10, 2014) (unpublished order). Thus, unless Bowles can point to evidence that he was subjected to hostile conduct on other occasions, he cannot withstand summary judgment.

Bowles contends that he was subjected to a campaign of intimidation and harassment by his Hispanic coworkers after the January 4th incident. Docs. 41 at 5-8; 31, ¶¶ 51-52. He states that he felt ostracized by these coworkers and afraid they would assault him. *Id.* at 5. And he alleges that Guerro had previously used racially derogatory language in the workplace towards another African American cook. *Id.* at 10.

These allegations might rise to the level of a hostile work environment, but Romulus cannot be held liable under Title VII unless it knew or should have known of its employees' hostile conduct. *See Fuller v. City of Oakland*, 47 F.3d 1522, 1527 (9th Cir. 1995) ("even if a hostile working environment exists, an employer is only liable for failing to remedy harassment of which it knows or should know"). It is undisputed that Bowles never complained to Romulus about feeling ostracized or threatened by his Hispanic coworkers. Doc. 31, ¶ 55. And there is no evidence that Romulus was aware of Guerro's prior racist remarks. Because Bowles has not produced any evidence that Romulus knew or should have known about hostile conduct other than the January 4th incident, Romulus cannot be held liable for this conduct.

In sum, Romulus is entitled to summary judgment on Bowles's hostile work environment claim because (1) the January 4th incident did not, by itself, create a hostile work environment, and (2) there is no evidence that Romulus knew or should have known about additional hostile conduct directed at Bowles or other employees.

**2.  Remedial Measures.**

Even if the Court were to conclude that a reasonable person of African American descent would find that the January 4th incident gave rise to a hostile work environment,

Romulus would be entitled to summary judgment because the undisputed facts show that it took adequate remedial and disciplinary action in response to the incident. *See McGinest*, 360 F.3d at 1112 (employee cannot withstand summary judgment without showing genuine issue of material fact as to whether employer's remedial and disciplinary action was adequate). Remedial and disciplinary action is considered adequate if it is "proportionate to the seriousness of the offense" and requisite to (1) "stop harassment by the person who engaged in the harassment," and (2) "persuade potential harassers to refrain from unlawful conduct." *Id.* at 1120 (citation omitted).

Immediately after hearing Guerro's remark, Romulus's manager informed Guerro that his language was not permitted in the workplace and that future use of such language would result in Guerro's automatic termination. Doc. 31, ¶ 10. The same day, Wallace gave Guerro a final written warning stating that Guerro would be automatically terminated if he made another racially derogatory remark. *Id.*, ¶ 12. Guerro assured the company that he understood its policies and that he would never use this language again. *Id.*, ¶ 13. Romulus was justified in concluding that these actions were sufficient to stop Guerro and other employees from engaging in similar harassment in the future.

Bowles argues that the company should have relocated or terminated Guerro. Doc. 41 at 8. The Court does not agree. The Ninth Circuit has held that "in some cases the mere presence of an employee who has engaged in particularly severe or pervasive harassment can create a hostile working environment," such that it may be necessary to remove the harasser from the workplace either by scheduling him to work at another location or during different hours from the victim, or else by terminating him. *Ellison v. Brady*, 924 F.2d 872, 883 & n.19 (9th Cir. 1991). But the Court cannot conclude that Romulus was required to relocate Guerro in the circumstances of this case. Based on the evidence produced by Bowles, it appears that Romulus knew about only one instance in which Guerro had used a racial slur in the workplace. Romulus took immediate corrective action in response to this incident. Given these facts, the Court cannot conclude that Romulus had reason to think that matters would escalate or that Guerro's

mere presence would cause African American employees to feel unsafe or humiliated in the workplace.  *Cf. Ellison*, 924 F.2d at 883 (suggesting that mere presence of an individual who repeatedly subjected female employee to unwanted romantic advances might create a hostile work environment).

Thus, as an independent basis, Romulus is entitled to summary judgment on Bowles's hostile work environment claim because it took sufficient disciplinary and remedial action to ensure that such harassment would not recur.

**B.    Retaliation.**

Title VII prohibits retaliation against an employee for "oppos[ing] any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e-3(a).  An employee states a prima facie case of retaliation by showing that "(1) he engaged in a protected activity; (2) his employer subjected him to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action."  *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000) (citation omitted).  Once the plaintiff sets forth a prima facie case of retaliation, "the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for its decision."  *Id.* (citation omitted).  If the defendant articulates such a reason, the plaintiff may prevail only if he shows that the defendant's justification is pretextual.  *Id.* (citation omitted).

Bowles contends that Romulus retaliated against him after he complained about the company's failure to fire Guerro.  Doc. 17 at 4.  Specifically, Bowles complains that Romulus assigned him to prep-cook and dish machine duties after he complained in mid-January 2014.  *Id.*

Romulus disputes that such assignments were an adverse employment action – that is, an action "reasonably likely to deter employees from engaging in protected activity."  *Ray*, 217 F.3d at 1240 (citation omitted).  Romulus notes that Bowles's job application indicated that he was willing to perform this type of work (Doc. 31, ¶ 45) and

- 7 -

that he never expressed any dissatisfaction with being assigned these duties while employed (*Id.*, ¶ 49). Romulus also disputes Bowles's suggestion that there is a causal link between Bowles's protected activity and the company's scheduling decisions. The company notes that it began assigning Bowles and several other line cooks to prep and dish duties on December 2, 2013, a month before Guerro's racial slur and a month-and-a-half before Bowles's protected activity. Doc. 31, ¶¶ 40-42.

Bowles contests the authenticity of the work schedule produced by Romulus. Doc. 41 at 9. The Court need not resolve this objection, however, because Romulus supports the same facts with affidavits. Doc. 31-1, Ex. 3, ¶ 28 (affidavit of Sherry Lowary, stating: "The Company did not retaliate against Mr. Bowles. He had been performing prep and [dish] duties through the winter."); Ex. 4, ¶ 18-19 (affidavit of Angel Wallace, stating that, when hired, Bowles asked to do prep and dish work to gain additional hours, and that he began doing such work toward the end of November or early December, 2013). Bowles asks to Court to ignore these affidavits because "they all . . . appear to be coerced" (Doc. 41 at 9) and because they are inconsistent with statements the affiants originally provided (*id.*). Bowles includes letters and affidavits from Lowary and Wallace as exhibits to his briefs (Doc. 42, Ex. F and G), and cites to them in his motion and response (Doc. 40 at 6; Doc. 41 at 9), but he provides no explanation of the alleged inconsistencies or evidence of coercion, and the Court can find none in his exhibits. The Court will therefore treat the affidavits as competent evidence. *Cf. Parker v. Cent. Kansas Med. Ctr.*, 178 F. Supp. 2d 1205, 1210 (D. Kan. 2001) (refusing to credit allegation that opposing party's affidavit was coerced where the assertion was "completely unfounded and unsupported by the record").[1]

Romulus's arguments are persuasive. The Court finds no evidence to suggest that an employee in Bowles's situation would be deterred from engaging in protected activity by an assignment to work prep and dish duties, particularly when he had agreed to

---

[1] Bowles notes that the affidavits of Wallace and Lowary were written about four months after the incident on January 4, 2014. Doc. 41 at 9. The Court cannot conclude, however, that this lapse of time renders them so unreliable that they must be disregarded.

perform these tasks in order to work more hours. In addition, the fact that Bowles was assigned these duties before his complaint negates a causal connection between the complaint and these duties. The Court therefore will grant summary judgment on Bowles's retaliation claim.

**IT IS ORDERED:**

1. Defendant's motion for summary judgment (Doc. 30) is **granted**.
2. Plaintiff's motion for summary judgment (Doc. 40) is **denied**.
3. The Clerk shall enter judgment accordingly and **terminate** this case.

Dated this 20th day of January, 2016.

*David G. Campbell*
David G. Campbell
United States District Judge